UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| DAVID W. WISHARD, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:16-CV-382 |
| | § | |
| CAROLYN W COLVIN, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND RECOMMENDATION

Plaintiff David Wishard brought this action on September 11, 2016, seeking review of the Commissioner's final decision determining he was not disabled. (D.E. 1). On May 5, 2017, Plaintiff filed a Motion to Remand or Summary Judgment and a Brief in Support of Claim on May 21, 2017. (D.E. 19 and D.E. 23). On July 12, 2017, Defendant filed a Responsive Brief. (D.E. 27). Plaintiff filed a Reply on July 24, 2017. (D.E. 29). For the reasons that follow, it is respectfully recommended that Plaintiff's Motion for Summary Judgment be **DENIED**, the Commissioner's determination be **AFFIRMED**, and Plaintiff's cause of action be **DISMISSED**.

## I. JURISDICTION

The Court has jurisdiction over the subject matter and the parties pursuant to 42 U.S.C. § 405(g).

## II. BACKGROUND

Plaintiff protectively filed his initial claim for supplemental security income and disability insurance benefits on September 12 and 13, 2012, alleging a disability onset date

as of January 1, 2005, due to gout, drop foot, knee ailments, high blood pressure, left shoulder ailments and depression. (D.E. 15-6, Pages 2-12 and D.E. 15-7, Pages 2-7).[1]

Plaintiff's application was denied upon initial consideration and was again denied upon reconsideration. (D.E. 15-4, Pages 2-21). At Plaintiff's request, a hearing was held before an administrative law judge ("ALJ") on November 6, 2014, at which Plaintiff and a vocational expert ("VE") testified. (D.E. 15-3, Pages 62-88). The ALJ issued an unfavorable decision on March 18, 2015, finding Plaintiff not disabled. (D.E. 15-3, Pages 9-23). Plaintiff requested the Appeals Council review the ALJ's decision, and the Appeals Council denied his request for review on July 22, 2016, making the ALJ's determination the final decision of the Commissioner under 42 U.S.C. § 405(g). (D.E. 15-3, Pages 2-8). Plaintiff timely filed this action on September 11, 2016, seeking review of the Commissioner's final decision. (D.E. 1).

The undersigned has reviewed the entire record. However, only those portions relevant to the pending issues raised are cited below.

## III.    STANDARD OF LAW

Judicial review of the Commissioner's decision regarding a claimant's entitlement to benefits is limited to two questions: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the decision comports with relevant legal

---

[1]Plaintiff filed several previous applications for benefits, beginning in 2005. (D.E. 15-7, Pages 2-4). Some of the administrative records provided involve Plaintiff's previous applications. Additionally, Plaintiff has now been awarded benefits as the result of a subsequent application Plaintiff filed on September 22, 2016. (D.E. 23-1, Page 2). However, as discussed later in this Memorandum and Recommendation, "[w]hether a subsequent application is approved is of no moment to the question of whether the prior application was meritorious *at the time of consideration*." *Winston ex rel. D.F. v. Astrue*, 341 F. App'x 995, 998 (5th Cir. 2009). Plaintiff's subsequent award of benefits was decided on a different record which is not before this Court.

standards. *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*; *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The burden has been described as more than a scintilla, but lower than a preponderance. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). A finding of "no substantial evidence" occurs "only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Johnson v. Bowen*, 864 F.2d 340, 344 (5th Cir. 1988) (citations omitted).

In applying the substantial evidence standard, the Court scrutinizes the record to determine whether such evidence is present. But the Court does not reweigh the evidence, try the issues de novo or substitute its judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (citations omitted). It is incumbent upon the Court to look at the evidence as a whole and take into account the following factors: (1) objective medical evidence or clinical findings; (2) diagnosis of examining physicians; (3) subjective evidence of pain and disability as testified to by the claimant and others who have observed him; and (4) the claimant's age, education and work history. *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (citations omitted).

In evaluating a disability claim, the Commissioner follows a five-step process to determine whether (1) the claimant is presently working; i.e. engaged in substantial gainful activity; (2) the claimant's ability to work is significantly limited by a physical or mental impairment; (3) the claimant's impairment meets or equals an impairment listed in the appendix to the regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the claimant, if determined to not have the residual functional

capacity ("RFC") to perform past relevant work, can presently perform other relevant work consistent with claimant's age, education, work experience and RFC. *Martinez v. Chater*, 64 F.3d 172, 173-174 (5th Cir. 1995); 20 C.F.R. § 404.1520; *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994).

A finding of disability or no disability at any step is conclusive and terminates the analysis. *Greenspan*, 38 F.3d at 236. The claimant bears the burden of proof for the first four steps. *Bowling*, 36 F.3d at 435. At Step Five, the burden initially shifts to the Commissioner to identify other work the applicant is capable of performing. *Id*. Once the Commissioner makes the requisite showing, the burden shifts to the claimant to rebut the Commissioner. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002). If the Commissioner can show that the claimant can perform other substantial work within the national economy, the claimant is adjudged not to be disabled. *Id*.; *see also* 20 C.F.R. § 404.1520(g)(1). If the Commissioner fails to show the claimant is capable of performing other work, or if the claimant successfully rebuts the Commissioner's findings, the claimant is found to be disabled and is entitled to disability benefits. *Id*.

## IV.    DISCUSSION

### A.    ALJ's Determination

On March 18, 2015, the ALJ found Plaintiff has not engaged in substantial gainful activity since September 13, 2012 and had the following severe impairments:  gout, obesity, hypertension, and osteoarthritis of the knees and left shoulder. (D.E. 15-3, Page 14). The ALJ further found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (D.E. 15-3, Page

16). The ALJ also held Plaintiff had the RFC to perform light work with the following restrictions: Plaintiff could lift/carry less than 10 pounds frequently and 20 pounds occasionally; could stand/walk for 4 hours in an 8 hour workday and sit for 6 hours in an 8 hour workday; could never climb ropes, ladders or scaffolds; could occasionally climb, kneel, crouch or crawl; could frequently balance and stoop; and could occasionally reach overhead with the left upper extremity. (D.E. 15-3, Pages 16-17). The ALJ concluded that considering Plaintiff's "age, education, work experience, and [RFC]," he could perform a significant number of jobs in the national economy, including electronics worker, inspector and router. (D.E. 15-3, Pages 22-23).

### B. Issues Presented

### 1. The ALJ's Step Five Determination

At this step in the analysis, it is the Commissioner's burden to establish a claimant's ability to work. 20 C.F.R. § 404.1520. The ALJ found transferability of job skills was not an issue because Plaintiff did not have past relevant work.[2] (D.E. 15-3, Page 22). As a result, the ALJ, considering Plaintiff's age, education, work experience and RFC, found there are jobs that exist in significant numbers in the national economy Plaintiff could perform. (D.E. 15-3, Page 22). The Commissioner's burden can be satisfied by relying on the Medical-Vocational Guidelines, otherwise known as the "grid," if a claimant's characteristics identically match the description in the grid. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2. If a claimant's characteristics do not identically match, the grid is used only as a

---

[2]At a previous administrative hearing on May 20, 2010, Plaintiff testified he had been self-employed as a cabinet maker or trim worker working for his father for the majority of his life and was paid in cash. (D.E. 15-3, Pages 41-42). Plaintiff further testified he had not worked for money since 2000. (D.E. 15-3, Page 41).

framework or a guide to the disability determination. *Id.* Here, the ALJ found Plaintiff could not perform a full range of light work and therefore, in reaching his determination and in support of his finding that Plaintiff could perform certain jobs, the ALJ relied on the testimony of the VE at the November 6, 2014 hearing. (D.E. 15-3, Pages 22, 67-69 and 85-87). Therefore, the ALJ used the grid only as a guide to the disability determination.

When a claimant suffers from impairments that potentially preclude him from performing a significant number of light, unskilled jobs, such that the application of the Medical-Vocational Guidelines is inappropriate, the Commissioner must rely on VE testimony or similar evidence to support a finding regarding the ability to perform a certain job. *See Carey*, 230 F.3d at 145. To support a determination of not disabled, the hypothetical questions posed to the VE by the ALJ must reasonably incorporate all disabilities of the claimant recognized by the ALJ, and the claimant must be afforded the opportunity to correct deficiencies in the ALJ's questions. *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994).

Plaintiff asserts remand is appropriate because of alleged inconsistences between the hypothetical question posed by the ALJ to the VE and the ALJ's subsequent RFC assessment in his decision. Specifically, Plaintiff argues (1) the hypothetical does not contain a carrying limitation and (2) the lifting limitation in the hypothetical limits lifting to "ten pounds frequently, 20 pounds occasionally" while the RFC assessment in the ALJ's opinion limits lifting to "less than ten pounds frequently and 20 pounds occasionally." (D.E. 23, Pages 7-9; D.E. D.E. 15-3, Page 17). In short, Plaintiff maintains the hypothetical question describes someone more physically capable than the ALJ ultimately determined

him to be.  (D.E. 23, Pages 7-9).  Lastly, Plaintiff asserts (3) the ALJ improperly considered him to be a "younger person" because, at the time of the decision, Plaintiff was approximately six months away from turning 55, at which point Plaintiff would have been considered a person of "advanced age."  (D.E. 23, Pages 5 and 9-14).

A review of the record demonstrates the ALJ's hypothetical to the VE did not specifically mention a carrying instruction.  (D.E. 15-3, Pages 67-68).  However, at the end of the hypothetical, the ALJ asked the VE, "Are there any jobs at the light exertional level that such a person with these limitations could perform?"  (D.E. 15-3, Page 68).  The light exertional level, by definition, includes both lifting and carrying limitations, specifically including "frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. § 416.967(b).[3]  Therefore, the undersigned recommends the ALJ reasonably incorporated Plaintiff's RFC carrying limitation in the hypothetical question posed to the VE.

Additionally, the ALJ did not err in relying on the VE's testimony because the hypothetical posed to the VE does not conflict with Plaintiff's RFC.  In his decision, the ALJ determined Plaintiff had the RFC "to lift/carry less than ten pounds frequently and 20 pounds occasionally."  (D.E. 15-3, Page 17).  As previously discussed, the definition of light work includes "lifting no more than 20 pounds at a time with frequent lifting…of objects

---

[3]20 C.F.R. § 416.967(b) provides, in relevant part, "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job in this category requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm and leg controls."

In contrast, 20 C.F.R. § 416.967(a) provides, in relevant part, "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools."

weighing up to 10 pounds." 20 C.F.R. § 416.967(b). Any difference between the ALJ's RFC determination limiting lifting to "less than ten pounds frequently and 20 pounds occasionally" and the hypothetical presented to the VE limiting lifting to "ten pounds frequently, 20 pounds occasionally" is merely semantic. In short, there is no material difference between the Plaintiff's RFC and the ALJ's hypothetical. *See Bryant v. Astrue*, No. 5:11-cv-71-DCB-RHW, 2012 WL 4339096, at *3 (S.D. Miss. Sept. 20, 2012) (No error where ALJ in his hypothetical to VE stated Plaintiff could "stand or walk for 6 hours during an 8 hour period" when he previously found Plaintiff could "stand/walk for 4-6 hours in an eight hour day"). Therefore, the undersigned recommends the hypothetical question posed by the ALJ to the VE reasonably incorporated Plaintiff's limitations as recognized by the ALJ in the RFC assessment. *See Bowling*, 36 F.3d at 435-36.

Lastly, the undersigned has considered Plaintiff's age argument. As part of the Commissioner's determination at Step Five, the ALJ takes into account the claimant's age, placing the claimant into one of three age categories: (1) a younger person, who is under age 50; (2) a person closely approaching advanced age, who is 50 to 54 years old; and (3) a person of advanced age, who is age 55 or older. 20 C.F.R. § 404.963(c)-(e). However, the Commissioner "will not apply the age categories mechanically in a borderline situation" which is defined as when the claimant is "within a few days to a few months of reaching an older age category." *Id*. In such instances, the Commissioner will consider whether placing the claimant in the older age category will result in a determination of disability; if that is the case, the Commissioner "will consider whether to use the older age category after evaluating the overall impact of all the factors [in any particular] case." *Id*.

Plaintiff, at the time his application was filed, was a 51 year old man with a 12th grade education and no past relevant work.[4] (D.E. 15-6, Page 2 and D.E. 15-7, Pages 8-9). Plaintiff was 54 years old at the time of the November 6, 2014 hearing and when the ALJ's March 18, 2015 decision was issued. (D.E. 15-3, Page 22). In his decision, the ALJ, listing Plaintiff's October 13, 1960 birthdate, determined Plaintiff "was 51 years old, which is defined as a younger individual age 18-49, on the date the application was filed." (D.E. 15-3, Page 22). Plaintiff asserts the ALJ incorrectly found he was a younger individual when he was at a minimum, at age 51, in the "closely approaching advance age" category and at a maximum, at age 54, "straddl[ing] the line between the 'closely approaching advance age' and 'advanced age' categories." (D.E. 23, Page 9). Plaintiff maintains he was in a borderline situation because, on the date of the ALJ's March 18, 2015 decision, he was 54 years old, just over six months away from being placed in the "person of advanced age" category.[5] Accordingly, Plaintiff argues the ALJ did not properly analyze his borderline age

---

[4]Plaintiff reported he stopped working in January 2005 because of his ailments. (D.E. 15-7, Page 8). While Plaintiff lists his past relevant work as a cabinet maker, the ALJ found Plaintiff has no past relevant work because Plaintiff had no listed earnings from 1998 to the time of filing. (D.E. 15-3, Pages 22 and 40-42). However, the undersigned notes Plaintiff testified in a previous hearing related to an earlier benefits application that he was self-employed and had worked as a cabinet worker with his father for the majority of his life, being paid in cash. (D.E. 15-3, Page 40-41). Plaintiff's attorney at the hearing before the ALJ in this case stated Plaintiff had "never worked for 25 years as a cabinet maker and his work history report…reflects that. He did some work as a carpenter for his father…" (D.E. 15-3, Page 66-67). The ALJs in both cases found Plaintiff had no past relevant work.

[5]While Plaintiff repeatedly asserts he was "six months and five days shy of turning 55" on the date of the ALJ's decision, the undersigned notes he was actually six months and 25 days away from turning 55. (D.E. 23, Page 11 and D.E. 29, Pages 5-7). Plaintiff was born on October 13, 1960 and the ALJ issued a decision on March 18, 2015. (D.E. 15-3, Pages 22-23).

and had he been placed in the "person of advanced age" category, he would have been awarded benefits after the application of Grid Rule 202.04. (D.E. 23, Pages 9-14).

The regulations do not specifically define a "borderline situation." When considering whether to apply an older age category, the regulations provide it is appropriate when the claimant is "within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that [the claimant] is disabled." *See* 20 C.F.R. § 404.1563(b). "Courts have reached conflicting results when applying the qualification that a claimant be 'within in a few days to a few months' of reaching the older age category." *Manning v. Colvin*, No. 3:13-CV-2178-D, 2014 WL 266417, * 4 (N.D. Tex. Jan. 24, 2014) (citations omitted). "A growing number of courts, however, appear to hold that a claimant within six months of an older age category presents a borderline age situation." *Id.* (citations omitted); *see also Jackson v. Colvin*, No. 4:16-CV-124-KPJ, 2017 WL 874835, *4 (E.D. Tex. Mar. 6, 2017) (citations omitted). The Fifth Circuit maintains that the decision to place someone whose age approaches another category in that category is within the ALJ's discretion and afforded considerable deference. *Harrell v. Bowen*, 862 F.2d 471, 479 (5th Cir. 1988); *see also Singleton v. Astrue*, No. 11-cv-2332-BN, 2013 WL 460066, *8 (N.D. Tex. Feb. 7, 2013) (citations omitted); *see also Fontenot v. Colvin*, 661 F. App'x 274, 277 (5th Cir. 2016).

The ALJ did not specifically address whether Plaintiff was in a borderline age situation. However, there is nothing that mandates the ALJ explain in a written decision why an older age category was not used. *Singleton*, 2013 WL 460066, at *8 (citations omitted); *Jackson*, 2017 WL 874835, at *4 (citing *Manning*, 2014 WL 266417, at *6.); *see*

*also Ware v. Colvin*, No. 3-12-CV-291-RFC, 2014 WL 4999276, *8-9 (W.D. Tex. Oct. 7, 2014). Further, Plaintiff's characterization of the ALJ decision as reliant on the guidelines is incorrect as the ALJ explicitly found the Plaintiff capable of making a successful adjustment to other work based on the testimony of the VE. (D.E. 15-3, Page 23). As previously discussed, the ALJ determined Plaintiff did not fit squarely into any of the Medical-Vocational Guidelines, and therefore, he elicited testimony from a VE to support a finding regarding Plaintiff's ability to perform certain jobs. (D.E. 15-3, Pages 22-23); *See Carey*, 230 F.3d at 145.

Plaintiff is correct that the ALJ incorrectly stated he was a "younger person" in the decision. However, the ALJ explicitly lists Plaintiff's correct birthdate and correct age in the same sentence and section. (D.E. 15-3, Page 22 and D.E. 15-6, Page 2). Further, in his hypothetical to the VE at the hearing, the ALJ first confirmed Plaintiff was currently 54 years old and was 51 years old on the date of filing and then asked the VE to consider someone of Plaintiff's age, education, work experience and RFC. (D.E. 15-3, Pages 22 and 66-69). The VE then opined there were jobs in the regional or national economy Plaintiff could perform. (D.E. 15-3, Pages 67-68). "The ALJ's reliance on VE testimony (based on a hypothetical that assumed plaintiff's age during the pertinent period) satisfies the ALJ's obligation to ensure that age categories are not 'mechanically' applied in a borderline situation to the claimant's detriment." *Benton v. Colvin*, No. 14-2387, 2015 WL 5024521, * 6 (W.D. La. Aug. 24, 2015) (citing *Singleton*, 2013 WL 460066, at *8-9) (other citations omitted); *see also Davidson v. Berryhill*, No. 1:16-cv-136-BL, 2017 WL 2616953, *3 (N.D. Tex. June 15, 2017) ("The ALJ here carried the step five burden by soliciting the testimony

of the VE and determining there were sufficient jobs [Plaintiff] could perform. Without also showing that the vocational expert's testimony could not be considered sufficient evidence for the ALJ's decision, merely speculating the borderline age should have directed a different result in a case where the ALJ relies exclusively on the grids is insufficient."); *Tackett v. Colvin*, No. 1:16-cv-181-MTP, 2017 WL 651957, *8-9 (S.D. Miss. Feb. 16, 2017) (relying on testimony from a VE satisfied the ALJ's obligation "to ensure that age categories are not 'mechanically' applied")(citations omitted).[6] Therefore, the undersigned respectfully recommends substantial evidence supports the ALJ's decision at Step Five.

### 2. Evaluation of Plaintiff's Credibility and Financial Ability to Afford Treatment

It is undisputed that throughout Plaintiff's medical records, Plaintiff reported he smoked 1 ½ packs of cigarettes a day for over thirty years. (D.E. 15-8, Pages 14 and 45 and D.E. 23, Pages 14-15). It is also undisputed that Plaintiff reported several times that he was financially incapable of following certain prescribed treatment or seeking additional treatment. (D.E. 15-3, Pages 75 and 79; D.E. 15-8, Pages 5, 62, and 74).

An ALJ's credibility evaluation is generally entitled to considerable deference by the Court. *McKnight v. Astrue*, 340 F. App'x 176, 181 (5th Cir. 2009). The ALJ is required to review the entire record, resolve conflicts in the evidence and state specific reasons for his

---

[6]In support of his argument, Plaintiff cites in his reply to the decisions in *Manning, Ware,* and *Jackson* in support of remand. (D.E. 29, Page 9). However, the undersigned notes the plaintiffs in these cases were closer to the advanced age category than Plaintiff and all were well below the general six month guideline. *Manning*, 2014 WL 266417, at * 5 ("Manning was less than four months from the next age category (a person of advanced age) at the time of the ALJ's decision"); *Jackson*, 2017 WL 874835, at * 3 and 6 (Plaintiff, age 54, was less than three months away from the advanced age category on the date last insured and was 55 at the hearing held before the ALJ and when the ALJ's decision was issued); and *Ware*, 2014 WL 4999276, at *5 (Plaintiff "was over 54 years and 11 months old at the time of the ALJ's decision; or 18 days short of her 55th birthday.")

credibility findings, supported by the evidence.  *Luckey v. Astrue*, 458 F. App'x 322, 326 (5th Cir. 2011).  The ALJ's explanation of his reasons for finding a plaintiff not entirely credible is all that is necessary.  *Tate v. Colvin*, No. 13-6552, 2014 WL 4982662, * 16 (E.D. La. Oct. 6, 2014) (citations omitted).

The ALJ first found Plaintiff to be "not fully credible" when considering Plaintiff's alleged limited ability to walk, stand, sit, bend or squat after thoroughly reviewing Plaintiff's reported daily activities, including his providing care for his parents, as well as Plaintiff's treatment records, containing both Plaintiff's subjective complaints as well as objective medical findings.  (D.E. 15-3, Pages 18-22).  As part of this credibility assessment, the ALJ then found:

> Further undermining the claimant's credibility is the reason he provided for not complying with medication.  He testified that he did not get some medications because of the cost and he did not want to unduly burden his brother who helped financially.  Nevertheless, the medical records reveal the claimant has a 1 ½ pack a day smoking habit although he repeatedly has been urged to quit smoking by his doctors.  Clearly, a good portion of the claimant's resources are used for cigarettes instead of medicine prescribed by his doctors.

The ALJ held that Plaintiff's "non-compliance and stated reasons for not complying certainly does reflect negatively on his credibility."  (D.E. 15-3, Pages 20-21).  The ALJ next found:

> The type of treatment documented throughout this record belies total disability.  There is no evidence that treating or examining physicians ever recommended invasive surgery such as total knee replacement or arthroscopic shoulder surgery.  Moreover, in spite of allegations of disabling pain, the claimant reports no current use of physical therapy, biofeedback, a TENS unit, iontophoresis, a dorsal stimulator, a morphine pump, massage therapy, braces or splints, special creams or ointments, chiropractic adjustments, hot/cold packs, or anything similar for pain relief.  (D.E. 15-3, Page 21).

The ALJ, after reviewing several medical source opinions, then concluded that:

> The medical evidence is not supportive of disability based upon the clinical findings and the totality of the evidence. The above residual functional capacity is supported by the objective findings regarding the claimant's functional limitations, the conservative degree of treatment the claimant has received, the claimant's credibility, and the record as a whole, which does not exhibit the types of medical treatment one would expect for a totally disabled individual. (D.E. 15-3, Page 22).

Plaintiff asserts the ALJ should have considered his reasons for not being able to quit smoking, arguing it is an addiction. (D.E. 23, Pages 14-16). Plaintiff also maintains the ALJ failed to properly consider whether he could afford certain prescribed treatments, citing *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987) (Although a condition that can be remedied by treatment is not disabling, a person unable to afford such treatment is considered disabled). However, upon review, the undersigned recommends substantial evidence supports the ALJ's decision.

In support of his arguments related to smoking, Plaintiff argues the Court should consider the Fourth Circuit case *Gordon v. Schweiker*, 725 F.2d 231 (4th Cir. 1984), and the Seventh Circuit case *Shramek v. Apfel*, 226 F.3d 809 (7th Cir. 2000). (D.E. 23, Pages 14-16). In *Shramek*, the Seventh Circuit found the ALJ erred in relying on the Plaintiff's failure to quit smoking as evidence of noncompliance because there was no medical evidence linking the plaintiff's smoking to the plaintiff's symptoms and it was "extremely tenuous to infer from a failure to give up smoking that the claimant is incredible when she testifies that the condition is serious or painful" given the addictive nature of smoking. 226 F.3d at 813. In *Gordon*, the Fourth Circuit found the Commissioner can only "deny the claimant benefits because of alcohol or tobacco abuse if [he] finds that a physician has

prescribed that the claimant stop smoking or drinking and the claimant is able to voluntarily stop." 725 F.2d. at 236.

In contrast to Plaintiff's argument, multiple district courts within the Fourth Circuit have specifically found that nothing in *Gordon* "preclude[s] an ALJ from considering a claimant's failure to stop smoking in the context of a credibility analysis," which is exactly what the ALJ did in this case. *See Massey v. Astrue*, No. 0:11-2251-MGL, 2013 WL 178369, * 7 (D.S.C. Jan. 17, 2013) (ALJ has no duty to develop the record as to Plaintiff's reasons for failing to comply with orders and the failure to comply with medical directives is an acceptable credibility determination); *see also Buckley v. Comm'r*, No. 1:14-CV-124-TLW, 2015 WL 3536622, *19 (D.S.C. June 14, 2015) (ALJ properly considered medical records indicating Plaintiff "smoked cigarettes daily" despite their "associated financial cost" when considering Plaintiff's alleged financial inability to obtain prescribed medical treatment because "the ALJ considered Plaintiff's explanation and provided reasons for rejecting it."); *Riegel v. Colvin*, No. 7:12-CV-526, 2014 WL 462525, * 8 (W.D. Va. Feb. 5, 2014) (A claimant failing to stop smoking contrary to doctors' orders "undermines the credibility" of Plaintiff's explanation that she could not afford medical insurance and therefore, could not seek treatment).

Here, the ALJ specifically considered Plaintiff's alleged financial inability for not complying with prescribed treatment and found his testimony to be not entirely credible, based in part on his financial ability to maintain his 1 ½ pack a day smoking habit. Recognizing the addictive nature of smoking, the undersigned recommends nothing in either of the cases cited by Plaintiff makes it inappropriate or unreasonable for the ALJ, as part of

a credibility assessment, to consider Plaintiff's ability to financially maintain a well-documented smoking habit when the same Plaintiff also argues he is unable to afford prescribed medications and treatment. While this evidence is not dispositive on the issue of credibility, it is certainly relevant and the addictive nature of smoking alone is insufficient to disregard such evidence in its entirety. An ALJ may still consider inconsistencies in the record which undermine Plaintiff's credibility, which is what the ALJ did in this case.

Additionally, Plaintiff's argument that the ALJ did not properly consider Plaintiff's financial inability to afford certain treatment is contradicted by the ALJ's numerous references to Plaintiff's finances in his decision. (D.E. 15-3, Pages 16, 18, 20 and 21). Therefore, it is clear the ALJ considered Plaintiff's alleged inability to afford certain treatment as well as the objective medical evidence in the record. *Chavira v. Astrue*, No. 11-CV-262, 2012 WL 948743, *24-25 (S.D. Tex. Feb. 29, 2012); *see also Davis v. Astrue*, No. 4:11-1327, 2012 WL 524185, *9-10 (S.D. Tex. Feb. 15, 2012) (citation omitted) (Claimant "does not identify any particular medical condition for which he was unable to obtain medical treatment" that renders him disabled").[7] Further, even if the ALJ had failed to consider this evidence, "an inability to afford treatment by itself is insufficient; a claimant

---

[7]While the ALJ may not have specifically referenced every treatment note where Plaintiff indicated he could not afford certain treatment, an ALJ is not required to explicitly discuss every piece of evidence in the record. *See Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994) ("That [the ALJ] did not follow formalistic rules in his articulation compromises no aspect of fairness or accuracy that this process is designed to ensure."); *See also Castillo v. Barnhart*, 151 F.App'x 334, 335 (5th Cir. 2005) (per curium) ("That the ALJ did not specifically cite each and every piece of medical evidence considered does not establish an actual failure to consider the evidence.") (citation omitted) ; *See also Hammond v. Barnhart*, 124 F. App'x 847, 851 (5th Cir. 2005) ("[An] ALJ's failure to mention a particular piece of evidence does not necessarily mean that he failed to consider it," and "there is no statutorily or judicially imposed obligation for the ALJ to list explicitly all the evidence he takes into account in making his findings…") (citation omitted).

must also show that [he] could not obtain medical treatment from other sources, such as free or low-cost health clinics." *Mason v. Comm'r of Soc. Sec. Admin.*, No. 3:08-CV-236-0(BH), 2009 WL 400831, *9 (N.D. Tex. Feb. 13, 2009) (citing *Lovelace*, 813 F.2d at 59) (condition is disabling in law if a "claimant cannot afford prescribed treatment or medicine, *and* can find no way to obtain it.") (emphasis added). Additionally, it is questionable whether *Lovelace* is even applicable here because the record does not necessarily support a finding that Plaintiff's alleged disabilities would have been alleviated by more regular medical treatment. *See Cornett v. Astrue*, 261 F. App'x 644, 649 n.3 (5th Cir. 2008) (citing *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990)) (ALJ was not precluded from relying on lack of treatment, even when a plaintiff alleges prompted by indigence, as an indication that subjective complaints were not credible when there was no evidence medical treatment would have alleviated alleged disability).

Lastly, as discussed above, the ALJ gave many reasons for discounting Plaintiff's credibility and in determining Plaintiff's RFC, such that any error the ALJ may have committed in commenting on the lack of medical treatment in view of Plaintiff's financial status was harmless. The ALJ's determination is otherwise supported by substantial evidence, namely Plaintiff's reported daily activities and his treatment records. The ALJ questioned Plaintiff at length, observed him during the hearing, and thoroughly reviewed all of his treatment records and the opinions of both examining and non-examining state agency physicians before determining Plaintiff's RFC. (D.E. 15-3, Pages 17-22). Therefore, the undersigned recommends substantial evidence supports the ALJ's decision.

**3.  Plaintiff's additional medical records do not justify a remand under Sentence Six of § 405(g) and the ALJ fully and fairly considered the medical evidence in the record.**

Lastly, Plaintiff asserts this case should be remanded to enable the ALJ to consider hospital records related to Plaintiff's chronic kidney disease ("CKD").  (D.E. 23, Pages 19-25; D.E. 23-1; and D.E 23-2).  In support of this argument, Plaintiff provides his medical records from an August 30, 2016 to September 22, 2016 hospitalization.  (D.E. 23-2).  Plaintiff also submits a December 8, 2016 Notice of Award Letter, indicating Plaintiff was awarded SSI benefits based on a September 22, 2016 application, finding Plaintiff disabled as of August 29, 2016.  (D.E. 23-1, Page 2).[8]  Plaintiff argues CKD "does not arise suddenly" and is a "slowly progressive" impairment.  (D.E. 23, Pages 19 and 21).  Citing to an impairment listing for CKD stating that a claimant may be considered disabled before dialysis begins and a disability onset date will be based on the facts in the case record, Plaintiff asserts remand is appropriate under Sentence Six of § 405(g) to allow the ALJ to consider Plaintiff's new 2016 records which could not have been considered when the ALJ rendered his March 18, 2015 decision.   42 U.S.C. § 405(g); (D.E. 23, Pages 19-20).

Alternatively, Plaintiff argues remand is appropriate pursuant to Sentence Four of § 405(g) because the ALJ failed to adequately develop the record by failing to order a consultative medical exam regarding Plaintiff's heart and kidney ailments.  (D.E. 23, Pages 22-24).

_____

[8]These documents do not state which ailment(s) rendered Plaintiff disabled.  Further, as previously discussed, "[w]hether a subsequent application is approved is of no moment to the question of whether the prior application was meritorious *at the time of consideration*."  *Winston ex rel. D.F.*, 341 F. App'x at 998.  Again, Plaintiff's subsequent award of benefits was decided on a different record which is not before this Court.

It is well established that when evidence external to the administrative record is submitted by a party on judicial review, the court will consider such evidence only to determine whether remand is appropriate. *Martinez v. Astrue*, 252 F. App'x 585, 587 (5th Cir. 2007) (citing 42 U.S.C. § 405(g) and *Haywood v. Sullivan*, 888 F.2d 1463, 1471 (5th Cir. 1989)). To justify this remand, the evidence must be (1) new, (2) material, and (3) good cause must be shown for the failure to incorporate the evidence into the record in the original proceeding. *Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir. 1994); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Further, the new evidence must relate to the time period for which benefits were denied, must not concern evidence of a later acquired disability, or the subsequent deterioration of a previously nondisabling condition. *Haywood*, 888 F.2d at 1471-72; *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987); *Martinez*, 252 F. App'x at 587. For new evidence to be material, there must be a reasonable possibility that it would have changed the outcome of the ALJ's determination. *Latham*, 36 F.3d at 483.

The new evidence submitted, which arose in August and September 2016, is clearly new and could not have been submitted at the administrative level as the ALJ issued an unfavorable decision on March 18, 2015, and the Appeals Council denied Plaintiff's request for review on July 22, 2016. (D.E. 15-3, Pages 2-8 and 12-23). However, review of this evidence from approximately one and a half years after the ALJ's decision, does not meet the materiality requirement. "Under applicable law, evidence of the worsening of Plaintiff's condition so long after the ALJ's decision became final, is not relevant to [his] condition at that time." *Hewitt v. Astrue*, No. 12-50-SCR, 2013 WL 5517987, *6 (M.D. La. Oct. 1, 2013) (Plaintiff failed to demonstrate new evidence warranted remand under Sentence Six

which showed Plaintiff's kidney disease had deteriorated and she now needed a kidney transplant almost two years after the ALJ's decision). The additional documents submitted from August and September 2016 do not relate to the disability period and do not prove that the ALJ's determination was erroneous in March 2015. *Martinez*, 252 F. App'x at 587. "[N]ew evidence does not 'warrant a remand because of deterioration of a condition resulting after the period for which benefits are sought…" *Hewitt*, 2013 WL 5517987, at *6 (citing *Joubert v. Astrue*, 287 F. App'x 380, 384 (5th Cir. 2008)).

Lastly, Plaintiff alleges the ALJ failed to fully and fairly develop the record because the ALJ should have ordered a consultative examination to investigate Plaintiff's kidney and heart disease as CKD is of a "slowly progressive nature" and Plaintiff's medical records indicated high blood pressure and gout. (D.E. 23, Pages 22-24). This argument is without merit. "The ALJ owes a duty to a claimant to develop the record fully and fairly to ensure that his decision is an informed decision based on sufficient facts." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (citation omitted). "Generally, however, the duty to obtain medical records is on the claimant." *Gonzalez v. Barnhart*, 51 F. App'x 484 (5th Cir. 2002) (the ALJ, who made numerous inquiries regarding [claimant's] medical condition and employment history, did not fail to develop the record by not ordering a consultative examination and a consultative examination was not necessary to enable the ALJ to make a disability determination).

The ALJ satisfied his duty to develop the record by thoroughly reviewing the objective medical records from Plaintiff's treating physicians as well as both examining and non-examining consultative exams over a period beginning in 2005. (D.E. 15-3). Further,

to obtain a remand for an ALJ's failure to develop the record, Plaintiff must demonstrate he was prejudiced by the deficiencies he alleges. *Brock*, 84 F.3d at 728 (explaining Plaintiff "must show that he could and would have adduced evidence that might have altered the result") (citation omitted). Plaintiff has failed to make a sufficient showing of prejudice and points to no sufficient evidence that, had the ALJ developed the record further, would have been offered at the hearing and changed the result. Hospital records from over one and half years after the ALJ rendered his decision are insufficient to demonstrate prejudice. The ALJ conducted a review of the entire record and used this information to determine Plaintiff was not disabled. The ALJ did not have a duty to request consultative examinations when the record already contained substantial evidence upon which to make a determination.

## V.    RECOMMENDATION

For the reasons stated above, it is respectfully recommended that Plaintiff's Motion for Summary Judgment be **DENIED**, the Commissioner's determination be **AFFIRMED**, and Plaintiff's cause of action be **DISMISSED**.

Respectfully submitted this 25th day of September, 2017.

Jason B. Libby
United States Magistrate Judge

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to 28 U.S.C. § 636(b)(1)(c); Rule 72(b) of the Federal Rules of Civil Procedure; and Article IV, General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a Magistrate Judge's report and recommendation within **FOURTEEN (14) DAYS** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).